# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS GLEN WYRICK, | 1:05-CV-01194 OWW NEW (DLB) HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHY MENDOZA-POWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented in this action by Linda Buchalter, Esq. This action has been referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Orange, following his conviction by jury trial on April 23, 1985, of murder in the second degree in violation of Cal. Penal Code § 187. See Petition, Exhibit A. Petitioner was sentenced to a total indeterminate term of 15 years to life with the possibility of parole. Id.

---

[1]This information is derived from the petition for writ of habeas corpus, the exhibits attached to the petition, Respondent's answer to the petition, and the exhibits lodged with the answer.

On August 24, 2004, a sixth parole suitability hearing[2] was held by the California Board of Prison Terms ("Board") at Avenal State Prison. See Petition, Exhibit B. Petitioner attended the hearing and was represented by his attorney, Ms. Buchalter. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for one year. Id. at 93.

On December 1, 2004, Petitioner filed a petition for writ of habeas corpus in the Orange County Superior Court challenging the Board's decision. See Answer, Exhibit 4. The petition was denied in a reasoned decision on March 22, 2005. Id.

On April 7, 2005, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeals, Fourth Appellate District. See Answer, Exhibit 5. On April 28, 2005, the petition was summarily denied. Id.

Thereafter, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Answer, Exhibit 6. On July 20, 2005, the California Supreme Court denied the petition with without comment or citation to authority. Id.

On August 15, 2005, Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Central District of California. By order of the Court dated August 31, 2005, the petition was transferred to the Eastern District and received in this Court. The petition for writ of habeas corpus does not challenge the underlying conviction; rather, it challenges the August 24, 2004, decision of the California Board of Prison Terms denying parole for a sixth time. Petitioner claims the Board arbitrarily and unreasonably denied parole without any evidence in violation of his constitutional rights.

On January 9, 2007, Respondent filed an answer to the petition. Petitioner filed a traverse on January 30, 2007.

///

///

---

[2] Petitioner states in his traverse that on April 12, 2006, he came before the Board for his seventh parole hearing and was again denied parole.

## FACTUAL BACKGROUND[3]

On August 19, 1983, Sally Martinez and her two-year old daughter Natalie spent the night with Petitioner at his apartment. At around 4:30 a.m., Sally was leaving for work. Before leaving, Sally placed Natalie, who had been crying, in bed with Petitioner. Natalie stopped crying and Sally then left.

Shortly thereafter, Natalie began crying again. Petitioner became irritated at having been roused from his sleep, so he punched Natalie in the abdomen several times. At some point after having punched her, Natalie stopped breathing. Petitioner attempted to revive her by sprinkling water on her and then by bathing her in the sink. When this did not work, he placed the child on the floor and performed what he believed to be CPR. However, the compressions he administered were improper and far too forceful for a two-year old. When his efforts failed, Petitioner called Sally and told her she needed to come home immediately.

When Sally arrived, she found Natalie lying on the couch with purplish-lavender colored bruises on her abdomen. The child was unresponsive. Sally then dialed 9-1-1. A neighbor arrived on the scene and called her son in to attempt CPR. His efforts also failed. Shortly after, the fire department and paramedics arrived. They also attempted CPR and were unsuccessful in reviving the child. A Santa Ana police officer contacted Petitioner at the scene. Petitioner informed him, "I'm probably the one you are looking for. I think I killed her."

The pathologist who performed the autopsy stated the child's abdomen had been crushed from the diaphragm to the pelvis and were inconsistent with improper CPR. The crushing injuries had caused a torn mesentery bowel, internal blood loss, and an air embolus to the heart. It was determined the child had died within five to ten minutes of sustaining her injuries. See Exhibit 3, Answer.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

---

[3] The factual background is derived from the May 23, 1987, opinion of the California Court of Appeal, Fourth Appellate District.

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

4

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

///

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Claims

A parole release determination is not subject to all of the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390; McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir.2002), *citing* Superintendent v. Hill, 472 U.S. at 456; Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.1994), *citing* Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir.1992). "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder. Powell, 33 F.3d at 40, *citing* Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.1986). However, "the evidence underlying the board's decision must have some indicia

of reliability." Jancsek, 833 F.2d at 1390; see also Perveler, 974 F.2d at 1134. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128, Toussaint, 801 F.2d at 1105..

With regard to the procedural protections outlined in Greenholtz, as Respondent submits, Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, representation by his attorney, and a written decision explaining the reasons that parole was denied. Petitioner, however, contends the Board's decision was not supported by the evidence.

In denying parole, the Board provided four reasons for its decision: 1) Petitioner's lack of insight into the commitment offense; 2) The need for continued participation in self-help programs to develop an appropriate level of insight; 3) The severity of the commitment offense; and 4) The need for programming to develop the skills necessary to avoid an incident such as this from recurring. Petitioner contends that none of these reasons are supported by any evidence. Alternatively, Petitioner argues that even if the Court finds that some evidence supports the Board's findings as to the severity of the commitment offense, Petitioner's due process rights have been violated because the Board is continuing to rely on an immutable factor. A review of Petitioner's parole hearing reveals that the state court decision finding the Board's decision denying parole was unreasonable.

The most important factor in the Board's determination was the commitment offense itself. The Board determined that the offense was carried out in an especially atrocious and heinous manner under 15 C.C.R. § 2401(c)[4]. In support of its determination, the Board made a

---

[4]Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous

positive finding as to the factor set forth in § 2401(c)(1)(D), that the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering. This finding was well supported by the evidence. Petitioner clearly used an extraordinary amount of force in striking the defenseless and crying child. Petitioner admitted to repeatedly striking the child with his fist, whether it was delivered palm down or by clenched fist. Ultimately, the child suffered a five-inch gash to her abdominal wall, and her large and small intestines were completely severed. See Answer, Exhibit 2 at 44. After the child's eyes "rolled back in her head," Petitioner did not call 9-1-1. Id. at 15. Instead, he sprinkled water on her, placed her in the sink, and attempted his own version of CPR. Id. at 15-16, 19. Finally, he contacted the mother to inform her that something was clearly wrong with the child. Id. at 17-18. Thus, there is some evidence supporting this finding.

The Board also found that the motive for the crime was very trivial pursuant to § 2401(c)(1)(E). Petitioner admitted his motive for striking the child was because his sleep had been disturbed. Obviously, the actions taken by Petitioner were immensely disproportionate to the trivial provocation for the offense. The Board's finding was well-supported by the evidence. Thus, the state court reasonably found the Board's finding that the offense was carried out in an especially atrocious and heinous manner was supported by some evidence.

In addition to the immutable factors of the crime itself, the Board found that Petitioner lacked insight into the commitment offense and needed further programming to develop the skills necessary to avoid an incident such as this from recurring. These findings are not supported by the record. Contrary to the Board's findings, the forensic psychologists who examined Petitioner found he did not need further treatment or psychological training. See Petition, Exhibit C. It was noted that Petitioner was not suffering from any mental health difficulties. Id. He demonstrated tearful remorse for his actions and detailed each misdeed, and he fully acknowledged responsibility for causing the child's death. Id. Further, the psychologists noted

---

disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

8

that Petitioner while incarcerated had received substantial programming, actively participated in self-help groups, held various vocational positions, been active in church groups, and participated in several sports. Id. In addition, in all his time in prison, Petitioner had not received a single disciplinary "chrono" and by all accounts was a model inmate. Id. The psychologists concluded that Petitioner did not require any further psychological programming to be considered for parole, and Petitioner was adjudged to have a low or negligible future risk for violence. Id. In light of these facts, the parole board's finding that Petitioner lacked insight into his offense and required further programming was completely unsupported.

Therefore, the situation that presents itself is one where Petitioner is being denied parole solely on the basis of the immutable factors of his commitment offense. Despite the positive forensic psychologist reports and his excellent record while incarcerated, Petitioner has been incarcerated thirteen years beyond his minimum eligible parole date and has been denied parole seven times with the only real reason for those denials being his commitment offense. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, ___ F.3d ___, 2007 WL 2027359 *5 (9th Cir. 2007), *citing* Biggs, 334 F.3d at 916. Nevertheless, in both Irons and Biggs, the Ninth Circuit upheld the denials of parole based solely on the commitment offense. This was because in each of these cases the prisoner had not yet served the minimum term of his sentence.

Here, however, Petitioner has been incarcerated for 23 years on a 15 years to life sentence. He has served well in excess of his minimum term. Furthermore, he became eligible for parole 13 years ago and he has been denied parole seven times. He has been a model inmate, having received not a single counseling chrono in all of his years of imprisonment. According to

9

the examining psychologists, he has programmed in an exemplary manner and is in need of no further programming prior to parole. In addition, he suffers from no mental or substance abuse problems. He has faced the facts of his commitment offense, shown remorse, and accepted responsibility for his actions. In every psychological examination, the psychologist has concluded that Petitioner poses either a low or negligible future risk of violence. Petitioner has solid parole plans. He has a stable social history. He has extensive support from family. Indeed, even the mother of the victim has written to the Board urging Petitioner's release. See Petition, Exhibit B. Other than the unchanging facts of Petitioner's crime, all applicable criteria indicate he is suitable for parole release. In light of Petitioner's exemplary prison behavior, evidence of rehabilitation and proven self-control, *inter alia,* the circumstances of Petitioner's offense no longer have a predictive value. The circumstances of the offense do not amount to some evidence to support the Board's conclusion that Petitioner poses an unreasonable risk of danger to the public if released.

Therefore, the Board's denial of parole has resulted in a due process violation. The petition should be granted, and the Board should be ordered to set a parole release date.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be GRANTED; and
2. The Board of Parole Hearings be DIRECTED to reverse its August 24, 2004, decision, thereby ordering the release of Petitioner to any applicable term or parole provided by California law, with credit for time since the August 24, 2004, decision as if release had been granted and any other term credit which he is entitled to by law.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to

1  Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served
2  and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the
3  objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
4  636 (b)(1)(C). The parties are advised that failure to file objections within the specified time
5  may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
6  Cir. 1991).

   IT IS SO ORDERED.

   Dated:   **September 10, 2007**           **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE