**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| THOMAS GLEN WYRICK, | ) | 1:05-cv-1194 OWW GSA HC |
| | ) | |
| Petitioner, | ) | ORDER RE: PETITION FOR |
| | ) | HABEAS CORPUS |
| v. | ) | |
| | ) | |
| KATHY MENDOZA-POWERS, Acting Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**BACKGROUND STATEMENT**

Petitioner, Thomas Glen Wyrick, is a state prisoner challenging a 2004 parole denial. He alleges that the California Board of Parole Hearings acted arbitrarily in denying him parole resulting in the denial of due process and violating his liberty interest in parole. Petitioner argues there was no evidence to support the denial. In the alternative, Petitioner claims that the denial was based on a static factor, the commitment fence, as the sole basis for the denial.

On September 10, 2007, Magistrate Judge Beck issued Findings and Recommendations recommending that the petition for writ of habeas corpus be granted, that parole denial be reversed, and

ordering the California Department of Corrections to release Petitioner, with credit for time served past the August 24, 2004, parole denial.

Respondent timely filed objections, alleging the Court improperly applied the sum-evidence standard in reaching its decision; that the District Court improperly re-weighed the evidence before the Board; and erroneously recommended an unavailable remedy.  Respondent further objects to the Findings and Recommendations that the Parole Board authority cannot rely on immutable factors after the passage of time.

## STANDARD OF REVIEW

The Court has fully considered, *de novo*, the petition, Respondent's opposition, the Magistrate Judge's Findings and Recommendations, and Respondent's objections pursuant to the provisions of 28 U.S.C. § 636(b).  Under the AEDPA, a habeas corpus petition will only be granted if the underlying claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.  *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).  Under the provisions of 28 U.S.C. § 2254(b)(2), to determine whether a State Court's factual determination is "unreasonable" a Federal Court "cannot simply consider whether [it] would have reached a different outcome on the same record." *Edwards v. LaMarque*, 475 F.3d 1121, 1125 (9th Cir. 2007).  "Only if the

evidence is 'too powerful to conclude anything but' the contrary" should a Federal Court grant relief. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005). By "clearly established Federal law" under § 2254(d)(1) is meant, the governing legal principle or principles set forth by the Supreme Court at the time the State Court renders its decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Whether the State Court's decision was "contrary to, or involved an unreasonable application of clearly established Federal law, is measured by whether the State Court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the State Court decides a case differently from the Supreme Court on a set of materially indistinguishable facts." *Williams,* at p. 413. This means a Federal habeas court may grant the writ if the State Court identifies the correct governing legal principle from the Court's decisions, but unreasonably applies the principle to the facts of the prisoner's case. *Williams*, at p. 413.

A Federal Court may not issue the writ simply because it concludes in its independent judgment that the relevant State Court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable. *Williams*, at p. 411. A Federal Court making the "unreasonable application" inquiry should ask whether the State Court's application of clearly established Federal law was "objectively unreasonable." *Williams* at p. 409. Petitioner has the burden of establishing the decision of the State Court is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321,

3

1325 (9th Cir. 1996).

Petitioner asserts that where a controlling State Court decision fails to address several of Petitioner's claims, a Federal habeas court will independently review the record to determine whether the State Court decision was "objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner relies on rules of Federal precedent that, although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant, persuasive authority in determining whether a State Court decision is objectively reasonable. *Himes v. Thompson*, *supra*, 336 F.3d at 853. Respondent invokes application of the "some-evidence" standard to review the denial of parole. Respondent contends that the "some-evidence standard" has not been clearly established by the United States Supreme Court as the standard to review a denial of parole. Although Respondent's argument was advanced by Judge Kleinfeld in his dissent from the denial of a petition for rehearing and rehearing en banc in *Irons v. Carey*, 505 F.3d 846, 853-54 and in *Culverson v. Davison*, 237 Fed.Appx. 174 (9th Cir. 2007), as well as other District Courts, *see*, e.g., *Sesma v. Hernandez,* 2007 WL 3243853 (S.D. Cal. 2007); it nonetheless remains the law of this Circuit, that the "some-evidence" standard applies and the District Court is bound to follow Ninth Circuit precedent as persuasive authority. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The statements in *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128-29 (9th Cir. 2006) and *Irons* are *dicta*,

4

nonetheless, the District Courts of this Circuit are required to follow the *dicta* of the Ninth Circuit. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005). Despite Respondent's contention that the *Irons* panel misconstrued *Biggs* and *Sass* by suggesting that it was a "holding," the *dicta* is strong and is binding on the District Court.

A parole release determination is not subject to all of the due process protections of an adversary proceeding. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 422 U.S. 1, 12 (1979). Because setting a minimum term is not part of a criminal prosecution, the full panoply of rights due a Defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists. *Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1399 (9th Cir. 1987). At a State Parole Board proceeding, the only process to which an inmate is due is: (1) the inmate must receive advance written notice of a hearing; *Pedro*, 825 F.2d at 1399; (2) the inmate must be afforded an "opportunity to be heard," *Greenholtz*, 422 U.S. at 16; and (3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." *Greenholtz* at p. 16. In determining whether the "some-evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence; rather, the Court must determine whether there is any evidence in the record that could support the conclusion of a disciplinary board. *Superintendent, Mass. Correc. Inst. v. Hill*, 472 U.S. 445, 455-56 (1958).

California Code of Regulations, 15 Cal. Code Regs.

§§ 2402(a) and (b) provide the following regarding inmate suitability for parole:

> (a)  General.  The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b)  Information Considered.  All relevant, reliable information available to the panel shall be considered in determining suitability for parole.  Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

In addressing the some-evidence standard, *Irons* held that a finding that the crime was cruel or vicious provided "some evidence" and that the commitment offense standing alone, was a sufficient basis to determine Petitioner unsuitable because the offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering and the motive for the crime was inexplicable or very trivial in relation to the offense.  *Irons* upheld the State Court's application of the some evidence standard.  505 F.3d at 852-53.  The Ninth Circuit addressed *Irons'* argument, as here, that, even if there is "some evidence" to support a finding of unsuitability for parole under the applicable California regulations, Cal. Code Regs. Title 15 § 2402(c)(1)(d)-(e), the Parole Board's reliance

6

on an <u>immutable</u> factor to deny him parole violated due process by finding, a continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, all of which runs contrary to the rehabilitative goals espoused by the prison system and <u>could</u> result in a due process violation. *Citing, Biggs* at p. 916-17 (emphasis added). *Biggs* recognized that the Parole Board's sole reliance on the gravity of the offense and conduct prior to imprisonment, justified denial of parole initially, over time, should a prisoner continue to demonstrate exemplary behavior and evidence of rehabilitation, denying parole simply because of the nature of the offense and prior conduct "would raise serious questions involving his liberty interest in parole." *Biggs* at 916.

In *Sass*, the Ninth Circuit held that denying parole to an individual in reliance on the offense of commitment did not violate due process. 461 F.3d at 1129. Specifically, the Parole Board's "reliance on the 'gravity' of the second degree murder of which *Sass* was convicted, in combination with prior incidents of unlawful conduct, provided a sufficient basis for the Board to deem *Sass* unsuitable for parole." The Court went on to say "because the murder *Sass* committed was less callous and cruel than the one committed by *Irons*, and because *Sass* was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, "our decision in *Sass* precludes us from accepting *Irons'* due process argument or otherwise affirming the District Court's grant of relief."

The *Sass* court then turned to the cases finding unsuitability for parole solely on the basis of the commitment

offense and distinguished where the decision was made before the inmate had served the minimum number of years required by his sentence.  In *Biggs*, *Sass*, and *Irons*, the Petitioners had not served the minimum number of years to which they had been sentenced by the time of the challenged parole decision by the Board.  *Biggs* at 912; *Sass* at 1125; *Irons* at 853-54.

The Board's Decision.

Here, the Board of Prison Terms, at a hearing of which Petitioner was given notice, at which he was heard, and given an explanation why he was not suitable for parole, found Petitioner "not yet suitable for parole, posing an unreasonable risk of danger to society or a threat to public safety if released from prison."  The denial was one year.  The Board found and stated several reasons for the denial of parole.

1.   The most important, "your level of insight into the commitment offense, coupled with the severity of the commitment offense."  The vulnerable victim two years of age, struck multiple times in the stomach causing a ruptured intestines which caused death.  Obvious lack of regard for life and suffering of the child because of the fashion in which he was struck.  A very small child struck by a 32-year-old man with his hand in an attempt to keep her quiet to stop her from crying.  [Immutable factors - past conduct.]

2.   The level of Petitioner's insight which is "disturbing" in that in 2004, Petitioner "paint[ed] [him]self as the victim and that your only mistake was that you struck this child, that you didn't call 9-1-1."  [Present conditions about Petitioner's current state of mind, state of denial or rationalization, and

8

misperception of his role and accountability.]

Petitioner did not acknowledge he never should have touched the child to begin with.  Petitioner did not admit he used too much force, that he was angry, that he was upset the child was crying.  Some of that was heard from Petitioner's attorney but the panel found Petitioner had "not yet developed appropriately this level of insight." [Past conduct.]

3.   Petitioner has not sufficiently participated in self-help programs.  Recognizing the most recent psychological report dated April 6, 2001, supports release, scoring the inmate's potential for future violence is low on all three risk assessment tools.  [Present factor regarding rehabilitation.]

4.   The panel considered Petitioner's stable social history, one prior conviction for misdemeanor drunk driving under the influence of alcohol, which seemed to be aberrant behavior in terms of the inmate's history.  The inmate had long-term employment, no other prior criminal history, all of which were acknowledged.  [Favorable factors - past conduct.]

5.   Petitioner needed to participate in continued self-help and to continue to delve into the causative factors for his participation in the life crime and to develop an appropriate level of insight to not only understand what led him to commit the crime, but to develop the skills so that something like this will never happen in the future.  "Until further progress is made in this area, [Petitioner] continues to remain unpredictable and a potential threat for re-offense."  [Attributing present risk to Petitioner's failure to achieve full understanding and acceptance of responsibility for his lethal conduct.]

9

     6.   The panel found that Petitioner had appropriate parole plans; numerous offers of residence, places of employment, marketable skills having completed a landscape course in prison.

     Petitioner was commended for his no-discipline record in the institution; that he acquired his AA degree; maintained a high TABE score; completed Vocational Landscape training; participated in on-going substance abuse therapy and Lifer Support Group, Process Group, Personal Growth Seminar, and ongoing Emergency Management Institute Program; participated in his religion; received work reports in a variety of locations; served as a clerk in the shoe factory and the PIA Furniture Factory; served in the Canteen; in the Knitting Mill; and in Main Education.

     7.   These positive factors were found not to outweigh the factors of unsuitability; also offset the support of the former attorney for Petitioner; were offset by the Santa Ana Police Department's and Orange County District Attorney's Office's response to the Cal. Pen. C. § 3042 notices that they are opposed to a finding of parole suitability.

     8.   Petitioner's use of the word "accident" to describe his crime reflect a manifest absence of insight into his actions, which were intentional in striking the child in an effort to keep her quiet.  The Petitioner's use of the term "accident" "goes to the heart of our issue, that there are lots of mistakes that you made, but the very first one was how you reacted to the child's crying and it continued and went down hill from there."  Finding that Petitioner was not the victim and that Petitioner was like every other inmate who committed - caused the death of another individual.  The sentence was not 15 years, it was 15 years to

10

life.

Finally, the Board recognized that "that doesn't mean you're never going to get paroled. You're doing all of the right things in prison and I could foresee a parole date in your future." The Chair specifically stated "But we, again, just did not feel today that you are [sic] the appropriate the level of insight into what happened and why it happened."

This constitutes more than "some evidence," these findings constitute more than reliance on the immutable factor of Petitioner's crime and his prior conduct. The Parole Board specifically found that an insufficient level of present recognition and understanding by Petitioner of his role and responsibility in the crime and an absence of full acceptance of responsibility for the murder. The Board found that a lack of insight has still been demonstrated by Petitioner. This evidence is not "too powerful to conclude anything but 'the contrary.'"

The Findings and Recommendation in effect substitute the Federal Court's judgment in evaluating Petitioner's statements to the Board during the parole hearing and the Board's concern that Petitioner had not developed the requisite level of insight into or sufficiently participated in self-help programs to eliminate a risk to society from his release. The Board was critical of Petitioner's position before the Parole Board that his crime of commitment was an accident and that Petitioner was a victim. Petitioner's conduct and the words communicated by himself and through his attorney to the Board at the hearing constitute more than "some evidence" from which a credibility determination and substantive decision was made by the Parole Board.

The remedy recommended by the Findings and Recommendations, that the petition be granted and the Board of Prison Terms ordered to vacate its decision denying parole and to release Petitioner and to credit him to the date of the parole hearing are not consonant with California Supreme Court authority, *In re Rosenkrantz*, 29 Cal.4th 616, 658 (2002), *cert. denied*, 538 U.S. 980 (2003). In that case, the California Supreme Court specifically held:

> If a decision's consideration of the specified factors is not supported by some evidence in the record and thus, is devoid of a factual basis, the Court should grant the Petitioner's petition for writ of habeas corpus and should order the Board to vacate its decision denying parole and, thereafter, to proceed in accordance with due process of law.

Respondent maintains that if the petition for writ of habeas corpus is granted, Petitioner's remedy is a new parole determination hearing before the Board of Prison Terms in which Petitioner shall be afforded due process.

Petitioner rejoins that this contention is "absurd and compounds the irreparable harm already accrued to Mr. Wyrick." *Citing*, California Penal Code § 3041(b): "The Panel or the Board sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense . . . is such that consideration of the public safety requires a more lengthy period of incarceration for this individual . . . ." Petitioner argues that no amount of further review by the Board can produce a different result and "[B]ecause any term so set, and his prescribed parole term, have elapsed, Mr. Wyrick should be discharged from all custody, or at least, as the Magistrate Judge determined, released from prison on parole while the Board

12

calculates his correct prison term and credits applicable toward parole."

California law does not authorize the remedy articulated by the Findings and Recommendations or by Petitioner. The granting of parole to a person sentenced to an indeterminate term upon a conviction of murder, is subject to review by the Governor of California. California Penal Code § 3041.2. Further, in contradiction to Petitioner's suggestion, the denial of parole was a one year denial, and it was specifically stated that upon achieving the requisite level of insight and further participation in self-help programs, the Board Chairperson opined: "I could foresee a parole date in your future."

## CONCLUSION

For all the reasons stated above, the Findings and Recommendations are NOT ADOPTED. The petition for habeas corpus is DENIED. Judgment shall be entered in favor of Respondent and against Petitioner.

IT IS SO ORDERED.

Dated:   **March 18, 2008**            **/s/ Oliver W. Wanger**
                                       UNITED STATES DISTRICT JUDGE